UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD DAVIS,

    Plaintiff,

        v.                       CAUSE NO. 3:20-CV-681-RLM-MGG

LIEVERS, et al.,

    Defendants.

## OPINION AND ORDER

Donald Davis, a prisoner without a lawyer, filed a complaint raising several concerns about how he was treated after he got COVID-19 at the Westville Correctional Facility. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A.

Mr. Davis alleges he was quarantined in a disciplinary restrictive housing unit and subjected to the same limitations as inmates who were there for disciplinary reasons except he was given oxygen and allowed to have his cell door open. The constitution doesn't create a due process liberty interest in avoiding transfer within a correctional facility. Wilkinson v. Austin, 545 U.S. 209, 222 (2005). An inmate will

be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). It's unclear whether his conditions were an atypical and significant hardship, but even if they were, after *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See e.g.,* Townsend v. Fuchs, 522 F.3d 765, 766 (7th Cir. 2008) (no liberty interest for 60 days in segregation) and Lekas v. Briley, 405 F.3d 602, 608-09 (7th Cir. 2005) (no liberty interest for 90 days in segregation). Mr. Davis was in segregation for "administrative" reasons because he was quarantined with COVID-19. This placement in segregation didn't violate his constitutional rights.

Mr. Davis alleges his oxygen level dropped below 86% on three occasions and he was taken to urgent care medical and seen by Nurse Livers. He says he told her that he had stomach pains, couldn't eat, and his urine and feces were brown. He alleges she refused to provide him treatment for those conditions because she was only concerned about his oxygen levels. For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). Low oxygen levels are a life threatening condition. Levels below 88% require

2

"immediate medical attention." *Pulse Oximetry*, U.S. National Library of Medicine, https://medlineplus.gov/lab-tests/pulse-oximetry/. "Cerebral hypoxia occurs when your brain doesn't get enough oxygen." *Cerebral Hypoxia*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/6025-cerebral-hypoxia. "Without oxygen, brain cells die, and a brain injury can occur. It can happen even when enough blood reaches the brain [and] no one can bring back dead brain cells or reverse a brain injury. The condition can result in lifelong brain damage. If it continues too long, it can be fatal." *Id*. Given the urgency of treating low oxygen levels, the complaint doesn't plausibly allege Nurse Livers acted outside the scope of professional judgment, practice, or standards by focusing on that medical problem to the exclusion of other less urgent medical conditions.

Mr. Davis alleges he was tested for COVID-19 by having his head held back while two long cotton swabs were inserted into his nose. He says this caused him pain. While his description alleges his test was administered with little compassion, it doesn't plausibly allege facts showing a substantial departure from professional standards. Nasopharyngeal swab specimen collection requires tilting the head back 70 degrees and inserting a long cotton swab. "The distance is equivalent to that from the nostril to the ear of the patient, indicating contact with the nasopharynx." *Nasopharyngeal (NP) Specimen Collection Steps*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/downloads/lab/NP-Specimen-Collection-Infographic.pdf.

Mr. Davis alleges he had severe nose bleeds and lost 64 pounds in 23 days while in quarantine. He says he asked for medication, but was told he couldn't have any without a prescription from a doctor. He was told his request was sent to medical, but he was never seen by a doctor. Whether these allegations could state claim is unclear, but he hasn't identified a defendant and explained how that person could be liable for having violated his constitutional rights. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009).

Finally, Mr. Davis alleges he was denied a shower and a change of clothing for seventeen days while in quarantine. That might be considered insufficient in normal times, COVID-19 quarantine wasn't a normal time. "The importance of the daily shower to the average American is cultural rather than hygienic . . .." Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir. 1988). Mr. Davis doesn't allege that was unable to adequately clean himself using the sink in his cell or that he had particularly filthy conditions that required more frequent showers. *See id*. and Jaros v. Illinois Dep't of Corr., 684 F.3d 667, 671 (7th Cir. 2012) (weekly showers are not a constitutional violation). Without more details about his circumstances and a defendant with personal knowledge of his particularized need, these allegations are insufficient to state a claim.

This complaint doesn't state a claim for which relief can be granted. Nevertheless, Mr. Davis may file an amended complaint if he has additional facts that he believes would state a claim because "[t]he usual standard in civil cases is to

4

allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Donald Davis until **September 22, 2021**, to file an amended complaint; and

(2) CAUTIONS Donald Davis if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on August 23, 2021

             s/ Robert L. Miller, Jr.
             JUDGE
             UNITED STATES DISTRICT COURT